Good morning. May it please the court. My name is Rachel Rubenstein and I'm here with my co-counsel Farley Katz, and we represent Alexander Bittner. We're here today because the IRS has passed nearly 3 million penalties against Mr. Bittner for his non-wilful failure to timely file a single annual FBAR form in the years at issue. Non-wilful means his failure was innocent or at worst negligent. The government contends that under the penalty statute, the IRS was permitted to impose this staggering amount because Mr. Bittner committed 272 account-based FBAR violations as opposed to one annual form-based violation, and that Mr. Bittner has no right to present his reasonable cause facts to a jury of his peers. Mr. Bittner disagrees, as should this court. We ask the court to affirm the lower court's ruling on the statutory construction issue and reverse on the issue of reasonable cause. My firm and I have represented many taxpayers involved in disputes with the IRS. Mr. Bittner's been our client for nine years. We've never seen the IRS treat anyone who it determines was non-wilful as harshly as Mr. Bittner. Many other taxpayers we have represented, like Mr. Bittner, who lived abroad, lived abroad, were non-wilful, and voluntarily disclosed their foreign income and assets years later, have had no penalties imposed at all. And that's consistent with public IRS guidance in Fact Sheet 2011-13 and the IRS's 2012 and 2014 Streamline Filing Compliance Programs. Mr. Bittner was born and raised in Romania, Romania, behind the Iron Curtain. In 1982, at the age of 25, he immigrated to the U.S. to escape the communist regime and discrimination against Jews. In the United States, he worked as a dishwasher and then a plumber. He learned English as his third language. Excuse me. Ms. Robinson? Rubenstein. I'm sorry, Ms. Rubenstein. So, on the statutory interpretation to show, I mean, this seems to me to be a pretty pure issue of statutory interpretation. I mean, we're told in 53-14 that, you know, the Secretary shall require certain things. And then we're told in 53-21 that there are penalties authorized for, you know, a violation or someone who violates 53-14. So, it seems to me the choice we have here is that a violation turns on a failure to file a report or a violation turns on the failure to report an account. That seems to be the basic choice we're given here. I mean, is that right? Yeah, I mean, it comes down to what's a violation, right? Yeah, exactly. And we're not given a definition, so we have to sort of cross-reference different parts of the statute to make sense of that. More importantly, 53-14, it imposes no reporting requirements on anyone. That's done by the regulations. The Supreme Court stated in California Bankers Association v. Schultz, I'm sorry, go ahead. They stated that the civil and criminal penalties attach only upon violation of the regulations promulgated by the Secretary. So, as I cross-reference these statutes, because I appreciate that the Court said that, but I'm wary of taking one sentence out of an old Supreme Court case and saying, well, therefore, the statute means this. When I look at willful violations, for example, and I'm looking at how to calculate that, I go to subpart D and I say, the amount is going to be, in part two, in the case of a violation involving a failure to report the existence of an account. And so, why shouldn't I read that and say, all right, well, the failure to report here is not a failure to file a form, but the failure to report the existence of an account, which would support the government's view. Yeah, sure. I would say that's the wrong provision of the statute. Okay, but there, I get it, but there's willful and then there's non-willful, and why should I read what a violation is, a non-willful violation is, differently from what a willful violation is? It's only the difference in the amount of the penalty. That provision is calculating the amount of the penalty. It's not authorizing the penalty. Subparagraph A authorizes the penalty. And it says, a civil penalty shall be imposed against anyone who violates 5314. Subparagraph B1 says, and the amount, it calculates the amount of the non-willful penalty shall not exceed $10,000. Right, but it doesn't tell me based on what, if, based, it shall not exceed $10,000 based on the failure to file one report or the failure to report one account. I think you go to the regulations to answer that question. The regulation 1010.350A and 1010.306C, those are the relevant reporting regulations, and those regulations require a person who has a financial interest in or signatory authority over to report on an F-bar, and it says, an F-bar, the form prescribed by 5314. You have to report on an F-bar the failure. So I would say, okay, that makes sense. The violation, therefore, is the failure to either timely or accurately file an F-bar. So you disagree with Judge Ikuda, then, in the Ninth Circuit, that there is a distinction between reporting an account and filing an F-bar, and she thinks that the relevant reporting is to report the account, not to file the form. So you would agree with the majority, and you, no doubt, are just to go with that. Yes, I would agree with the majority in void. I believe that the dissent, the dissent reads 5314, and the government argues that 5314 itself independently imposes reporting obligations, but the text of it does not do that. Well, so then I'll leave you alone, I promise. 5314A says the Secretary shall require blah, blah, blah, a resident to file reports, now, or to keep record and file reports. Now, you read that as meaning to file the physical form as opposed to report the account. The statute says the Secretary shall require reporting to the manner and to the extent, right, that the Secretary wants to do, and then it gives some broad things. Those broad categories of information, the only place, the only form in existence where you would report that is the F-bar. But you have to indicate multiple accounts on the form. It depends on whether or not you have, if you have an interest, a financial interest in more than 25 accounts, like Mr. Bittner did here, all you have to do on that form is you check a box, well, you put your name, you check a box indicating I have a financial interest in more than 25 accounts, and you list the number of accounts. There's no account info, no address of the bank, no balances. Okay. But if it's incorrect, there's no statutory determination for the difference between a willful and a non-willful violation, right? Well, there's meanings to willful and non-willful. So non-willful is innocent conduct, or at worst, negligent. Willful is an intentional violation of a known legal duty. Right. So where in the statute does it make a distinction? The penalty statute makes a distinction, of course, not the reporting statute or not the authorizing statute. The penalty statute makes a distinction, right? It authorizes a penalty in subparagraph A. Subparagraph B1 caps the non-willful penalty at 10,000, shall not exceed 10,000, and that's for non-willful. And then subparagraphs C and D calculate or give the amount of the willful penalty. So there is a distinction in the statute as to a willful violator or a non-willful violator. And there could be very good reasons why Congress would do that. Again, willful violators pose a fundamentally different obstacle to the tax system or to the government's ability to monitor inflows and outflows of foreign accounts than non-willful. You know, non-willful is innocent mistakes, unintentional mistakes. What are we supposed to make of 532145BI2? It's talking about the reasonable cause exception and how you deal with the penalties. It says no penalty shall be imposed under subparagraph A with respect to any transaction or the balance in the account at the time of the transaction was properly reported. So let's say you have 20 accounts. 10, the balance was properly reported. 10, it was not. What's the outcome? In order to qualify for the safe harbor reasonable cause exception, you need to ultimately have reported all the accounts correctly. Not necessarily timely, but correctly. So what's the penalty in my example? The penalty in your example, if it's non-willful, the penalty is $10,000. But it talks about the account. Well, that's the safe harbor clause. That's giving relief. That part, B2, is saying no penalty at all shall be imposed. I was right 10 out of 20 times, so why should there be any penalty? Because 10 of the 20 of the 20 accounts was correct, so I shouldn't have any penalty because the balance in the account at the time of the transaction was properly reported for 10 of them. If you later corrected? I didn't. You didn't correct? I'm just asking what this says, safe harbor. At the time of the transaction, I properly reported the amount in 10, but not in the other 10. Then you would have a $10,000 penalty. The safe harbor, it's a different provision, and if we use the safe harbor clause, which again provides for no penalty, to then try to expand the definition of what's a violation, I think that goes way beyond the text of the statute. And really, the safe harbor provision is completely independent from the violation itself. As the lower court said, Congress can forgive non-wilful violations any way it likes, even in ways that have nothing to do with the underlying violation. Well, I've talked about that. Let's see. I'd like to talk a little bit about the reasonable cause issue. It's a deeply factual inquiry, and reasonable minds can differ on emphasis drawn from undisputed facts, so we do ask the court to reverse the lower court's decision to allow Mr. Bittner the opportunity to present his facts to a jury of his peers. Mr. Bittner's particular facts and circumstances, including credibility and state of mind, that'll determine whether or not he had after weighing all the trial evidence. And so I'll also summarize by saying, you know, what's a reporting violation? Again, you look to the relevant regs. U.S. persons having a financial interest in or signatory authority over file a single form, the FBAR, and they report the information as specified on the form by a date that's what the regs require. And from the inception of the implementing regs, the reporting of foreign bank accounts has always been done on a single FBAR form. Prior to 2004, no penalty was imposed at all for non-wilful violations. In 2004, Congress increased the willful penalty and then added a civil penalty for non-wilful violations. So tell me that again, when did that happen? In 2004. So what was the penalty structure before that? The penalty structure before that, only willful violators were penalized and the penalty was $25,000 or 50% of the balance in the account not to exceed $100,000. And then there was no penalty at all for non-wilful. In 2004, they changed, they increased the willful penalty. They increased it to either the greater of 50% of the balance in the account or $100,000. That's willful. And then they added a civil penalty for non-wilful violations not to exceed $10,000. And that was done to encourage compliance and deter unintentional mistakes, not to impose draconian limitless penalty amounts for unintentional or innocent mistakes. And I don't think when we go, we talk about willful versus non-wilful. The violation is the same, right? The failure to timely file, timely file or accurately file an F-bar. It's the computation of the penalty that's different. Thank you. Thank you. Excuse me. Good morning, your honors. May it please the court. My name is Paul Aloulis appearing on behalf of the United States. Your honors, the penalty at issue in this case turns on your interpretation of the phrase, any violation of any provision of section 5314. That's the relevant phrase in the penalty statute, section 5321 that is under interpretation. You must admit it's a pretty harsh penalty. It can be. It, your honor, this case imposing a 200, a $2.7 million penalty is because there were 270 violations and Congress has determined that $10,000 per violation is an appropriate amount. The only reason why there's such a large number here is because there were so many violations. There were 51, 53, 54, 61 violations per year in this case. The statute says shall not exceed 10,000. So that's correct. Secretary exercises some kind of discretion about the amount of per, if it is a per account of penalty. Yes, your honor. That, that, that's an important point here. $10,000 is the maximum amount allowed per violation. And the, the secretary does in fact have an entire system of mitigation guidelines that are employed to determine whether that $10,000 amount should apply per violation. And so it was calculated as just straight up $10,000 per account. Is that right? Yes, your honor. Because the, the service in, in, in working this case determined that the maximum penalty should apply per violation based on the facts as, as presented here. With the allegation it was willful. Excuse me, your honor. With the allegation or the presumption that it was willful, that the violations were willful. What would be the penalty amount if it was willful? Uh, the penalty amount in that case is calculated as either $100,000 per violation or 50% of the balance of the account that's not properly reported. And so in this case, it's a little bit difficult to figure that out because we would need to know individually what was the balance of every single account in every single year. But I can say that, um, in the years at issue here, the account balances in aggregate ranged between $3 million and $16 million. So, uh, the, the willful penalty here for one year could be as high as $8 million, about 50% of the value of the accounts, uh, in, in that year. So your position is the penalty was not willful? The penalty that was imposed here was, was a non-willful penalty. That's correct. That's what I was going to ask. These are not, we're not talking about willful here. That's correct. These were, these were non-willful penalties imposed $10,000 per violation, uh, calculated, uh, uh, according to each account that was not reported, um, as required. Um, and we think that that's the correct result, your honors. So what's the key? So you say, I mean, you're, you're, you're right. I agree with you. We've got to look at the statute we've got. And because we're not given a definition of violation in 5314 or 5321, we have to look, in my view, we have to look at the different sub parts to try to construct what is a violation. Uh, your friends on the other side say a violation is a failure to file an F-bar. Okay. I get that. After all 5314 does speak about the secretary requiring someone to file reports. Okay. So, but then where should I look in 5321 to try to figure this out? Your honor, I, I think the inquiry does start in section 5314 and that's because section 5314 requires the secretary to promulgate regulations requiring either the keeping of records or the filing of report reports regarding two things, either transactions or relations. Those are the important items that are, that are indicated in the statute. Why, why shouldn't I stumble on your position on the word, on the phrase file reports in 5314A? Does that point to the filing of an F-bar report that would be required in the regulations? Well, certainly your honor, section, in section 5314, Congress left to the secretary to promulgate regulations to, to implement the substantive requirement contained in section 5314 to report transactions and relations. It left the details of that reporting to the secretary to carry out, but the substantive obligation to report transactions and relations is contained in section 5314 and the statute mandates that the secretary shall implement, uh, promulgate regulations implementing that substantive requirement. There is no discretion to implement, to promulgate the regulations. The secretary must do it and those regulations must require the, the keeping of reports, the keeping of files or the filing of reports for transactions and regulations. And then we come to section 5321, the transaction relation, uh, dichotomy continues into the penalty statute and I think that's where some of the potential confusion comes in here. And, um, in section 5321, in each instance where it was necessary to differentiate between a transaction and a but where it was not necessary to differentiate between a transaction and a relation, the statute does not do so. And so in, um, the, the section imposing the non-willful penalty, the statute provides that the amount of the penalty imposed shall not exceed $10,000 for any violation of 5321. The amount of the non-willful penalty is not dependent upon the size of the transaction or the balance in the account. It's simply $10,000 per violation. So there was no need for Congress to differentiate between transactions, between transactions and relations when it set the penalty at $10,000 for a violation of, of 5314. And that's why we don't see, uh, a differentiation between accounts and transactions in the statute imposing the $10,000 penalty. In other portions of section 5321, it was necessary to draw that distinction. And the first place comes in the reasonable cause exception to the non-willful statute. And there, the difference comes in because we need to look at, first, was the violation subject to reasonable cause? But second, was the amount of the transaction or the balance in the account properly reported at some point? There, it was necessary to differentiate between transactions and accounts. And that's why the language does that. And then again, in the, in the calculation of the penalty for willful violations, we see the same, we see the same breakdown. And so the amount, again, there could be $100,000 per violation. Or, again, in the case of a violation involving a transaction, 50% of the amount of the transaction. In the case of a violation involving the failure to report an account, 50% of the balance in the account. And so 5321, the discussion of both transactions and accounts, really reflects the language that is in the substantive reporting requirement of section 5314. It really does all dovetail together quite well. And in terms of the regulations, the regulations also reflect that. 31 CFR 1010-350A indicates that United States persons have an obligation to report such relationship to the Commission of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form. So the regulations, again, reflect the substantive reporting obligation to report a relationship with a foreign financial agency. And so really all of these things fit together. Do you happen to know why it's, it's a, from someone like me who's not intimately familiar with this area of law, why is the phrase such relationship, relationship used when we're speaking about an account as opposed to transaction? It just struck me as a, is it a term of art? Your Honor, I'm not sure exactly why that was the original language that was used in the statute, but it was made clear, and particularly through the regulations, that what we're talking about when we talk about a relationship with a foreign financial agency is an account. But I think the answer is because there could be several different types of accounts. There could be a bank account, there could be some type of like a security trading account, those types of things that could exist which would also constitute relationships under the statute and under the regulations. And so, Your Honor, I believe that as the statute is written, 5321, really there isn't any ambiguity here. There is no ambiguity. The, the reasonable cause exception to the non-wilful penalty and the calculation of the willful penalty all inform what the language, what the, what the critical phrase here, any violation of any provision of Section 5314 means. And once we, we, we understand that the phrase any violation of any provision of Section 5314 means either the failure to report a transaction or the failure to report the existence of an account, then all that need happen is to apply the potential maximum penalty to each one of those violations, $10,000. And in this case, there were 271 violations, so therefore, $10,000 times 271. You said earlier it's not necessarily $10,000 per account for a non-wilful violation. Correct. It could be less, depending upon certain factors, and we're not really, we're not being asked to review that aspect of the statute. No, Your Honor. The IRS, it contains in the Internal Revenue Manual, there are mitigation guidelines that it could apply in both non-wilful and willful situations to determine whether a lower penalty should apply. In some circumstances, the guidelines even allow for an issuance of a warning letter. In some circumstances, the guidelines may allow for the issuance of a single penalty spread out, calculated with respect to one year, but spread over multiple years. There are different types of mitigations that may apply. In working up this case here, the IRS did not determine to exercise that discretion and went ahead and imposed the statutory maximum, but there's no argument made in this case that some lower amount should have been applied. The argument here is simply that the maximum penalty that can be imposed is $10,000 per year, as opposed to $10,000 per violation, and that's simply not correct. Well, with respect to the decision-making of the IRS, opposing counsel says she's never seen a case this harsh with these kind of penalties. Was there some underlying reason that doesn't really come out in the pleadings as to how this penalty got so high? I'm not certain, Your Honor, exactly what the decision-making process was as to why the IRS determined to impose the maximum penalty for every single violation in this case, but it is within the statutory maximum that is allowed, and so I think that's all that the Court is being asked to decide here today, is whether that penalty is within the statutory maximum that can be imposed. I don't know if that's something that came into account in this case, but this is an unusual circumstance because of the number of unreported accounts that present themselves here. Typically, there aren't that many unreported accounts. I mean, I'm not sure if this goes outside the pleadings or not, but it struck me as I read the briefs that we're talking about an individual who's fairly sophisticated financially. I assume we're talking about a lot of money overall. I mean, I don't know if $2.7 million is harsh. It depends on how much money we're talking about, right? I mean, it sounds like a big number to me, but . . . Well, Your Honor, it is correct that the amount of the penalty for it is $2.7 million. It's simply a flat $10,000 maximum penalty per violation regardless of the balance in the accounts, but it is true that in this case there were many millions of dollars in these accounts, ranging from $3 million in one of the reporting years to $16 million in another of the reporting years. What is the theory, if there is one, behind imposing a per penalty? Why does that make sense in terms of the overall structure of the statute and the purpose of the statute? Well, Your Honor, the purpose of the statute is to ferret out foreign accounts which are not known to the United States and which have been determined to have been used for . . . not in this specific case, but in general, foreign accounts have been shown to have been used for criminal purposes, for tax evasion purposes, for money laundering purposes, and that's really what underlay the government's passage of the Bank Secrecy Act in 1970, of which Section 5314 is a part. But most of those would be willful violations. Well, Your Honor, the existence of the account . . . not necessarily. Somebody could be evading United States taxes and not willfully reporting the account to the United States. I mean, for many, many years, Swiss bank accounts were held in secrecy by the Swiss banks themselves, and people could be assured of secrecy simply by virtue of having accounts in those banks. And what's changed in recent years is the government's ability to get records of those accounts and to equate a nefarious criminal purpose or some other purpose in holding an account with the willfulness or non-willfulness of reporting the account. But I think, really, getting back to Judge Duncan's question, the issue is it makes sense to have it on an account basis, because the government, the service, needs to investigate, needs to have the ability to investigate whether accounts are being used for nefarious purposes. When there are these accounts existing in many different jurisdictions around the world, we need the ability to go and investigate whether something is happening with those accounts. And when they're not properly reported, that can't be done. There's . . . it's very, very difficult for the government to ferret out whether these accounts exist. You can say it's not properly reported, say it's still subject to a fine, and investigate why it's not reported, what's in it, where the money came from. It doesn't seem to be that imperative. The amount of the penalty has any relationship to the ability to investigate. Well, there are certainly no findings in the statute or in the regulations specifically tying $10,000 to the expense of investigating any particular account. That's correct. But Congress clearly felt that there was some amount of money that would be necessary in order to offset those investigative costs and to incentivize people to come forward and disclose their accounts. And it shows that number. When these accounts were discovered, were they investigated to see if they were nefarious or illegal? I don't know the depths to which all of the accounts that were at issue here were investigated, Your Honor. I know ultimately there was some amount of tax that was due in Owing. I don't remember the exact amount, but as far as I understand, there were no criminal proceedings or anything that came out of the discovery of these accounts, no. The majority in the Ninth Circuit, one aspect of its reasoning was, well, the regs allow a reporting form to aggregate a number of accounts, and so therefore we should not read the penalty for a non-wilful violation on an account basis. Do you have a response to that reasoning? I assume you disagree with it. Yes, Your Honor. First, simply looking at the rule for holders of more than 25 accounts, the regulation as it currently exists and as it existed at the time allowed a filer to file the form to identify the fact that they held foreign accounts and to tell the number of foreign accounts that they had. And so the way the form existed at the time, there was a limited set of information that was required to be reported if you held more than 25 accounts. At a minimum, you were required to report the existence of all of those accounts by indicating on the form and informing the Secretary, this is how many foreign accounts I have. So the minimum requirement of Section 5314 and Section 5321 is to report the existence of those foreign accounts. And even for holders of more than 25 accounts, the regulations in existence at that time required you to report the existence of those accounts. Meaning that I understand you're supposed to say I have more than 25 accounts. Were you required to say I have 57? Yes, Your Honor. Yes. And then that would put the amount. So you could report $1,000 in 25 accounts and have 25 accounts with a million each and not have much penalty for failing to report the larger accounts with a million dollars each, right? For a non-wilful violation, the penalty, the maximum penalty is $10,000 per account without regard to the balance in the account. That's correct. Yes. Yes, Your Honor. But you reported the existence of the account and timely did it, but you didn't report the amount. You're not required to report the amount. So if someone at that time, if somebody held more than 25 accounts, they were required to report the existence of the number of accounts that they held, and that's correct, and their own identity. They were not required to report the balance in any one of the accounts at that time. Holders of between 1 and 25 accounts were required to report more information, including the range of balances in the accounts. That's correct. Yes. I'm just trying to grasp the statutory scheme here and the regulations. I mean, you could accurately report 25 relatively small accounts and avoid any penalties, and you weren't required to report huge amounts in more than the first 25 accounts. I mean, what sense does that make in terms of imposing a penalty? I'm slightly confused by Your Honor's question because I think the question started with the proposition that you could avoid penalties by accurately reporting 25 small accounts. So— And why is the government—and the government really doesn't care how much money is in the other 25 or 50. Pick a number beyond the first 25. They don't care if it's accurate reporting. You're not required to report at all. Now I understand Your Honor's question. The Section 5314 instructs the Secretary to avoid burdening filers, and so this choice to allow filers, if they held more than 25 accounts, to simply indicate the number of accounts, I think was an effort to carry out that mandate to avoid burdening filers. Now, even in that circumstance, the filers are required to maintain the information in the records and to produce it when requested by the service. So if somebody files an FBAR and indicates that they own 57 foreign bank accounts, the service can then summon that information from the taxpayer or from the filer and say, okay, now tell us, give us the further information that you're required to maintain about all of those accounts. And so I think that that exception for holders of more than 25 accounts was really an effort to try to avoid the burdensome nature at a time when paper filing was the norm, to avoid the difficulty of that. I would point out to the Court that there are currently pending regulations that are removing that exception for filers of more than 25 accounts. So in the future, that will be different. But at the time, it is correct that that exception existed. I understood what you said. The government, with respect to somebody who has 50 accounts, on the FBAR form, you're required to say, yes, I have more than 25. I have 50. So the government then knows the number of accounts, and the government can then request more information about those accounts if it deems we need to look into it more. Violation, if you only said, if you failed to check the box, for example, you're not reporting, let's say you checked the box and said, well, yeah, I have 30. Well, you're not reporting the existence of 20 accounts. So in your view, the filer would have violated the, there would be 20 violations there. Yes, Your Honor. Okay. So there could be a non, if it's non-willful, a penalty of up to $10,000 per each one of those 20 accounts, regardless of the amount of the account? Yes. Okay. Thanks. Thank you, Your Honor. Maybe. A couple things. Mr. Bittner had so many accounts that were reportable because he had a financial interest in operating Romanian companies. That wasn't his money. The only personal accounts were nine accounts. All the rest of the accounts were company accounts. He didn't even have signatory authority over those company accounts, but the regulations define financial interest as if you're an investor that owns more than 50% of the stock in a company, you have a financial interest. So I think that's a really important thing here. We're not talking about money that Mr. Bittner individually had. We're talking about personal accounts. Your experience, I see you say you've represented Mr. Bittner for many years. I don't know if you represent other people in relation to filing of FBAR accounts. I do. So the government represented that. With respect to a non-willful violation, it can look at mitigation factors such that the penalty, if it is per account, doesn't go all the way up to $10,000, but is lower. I mean, is that your experience? So the agent, we represented Mr. Bittner during this exam, so the agent misunderstood the mitigation. In fact, not only does the IRM, the Internal Revenue Manual, tell an IRS agent to look at mitigation in non-willful circumstances, the IRM also says generally do not apply a for reasons unknown. She penalized him in the worst way possible. What is the mechanism for contesting that aspect of it? That's the problem. There is no mechanism. The only mechanism really is if you'd have, the penalties get assessed without what are called deficiency procedures. So like say the government wants to assess more taxes, they have to send you a notice of before payment. These are called automatically assessable penalties. You can't challenge them, but no judicial review beforehand. You have an Eighth Amendment claim here? We did have an Eighth Amendment claim that the lower court determined was moot. Moot because if it's only... If it's only $50,000, that's right. Yeah, you don't have to consider it. That's right. But if this case went back, that issue would be at play. So yes, these were company accounts. Also, going back to, we talked a little bit, or we were talking a little bit with the other attorney about transactions and 5314 and then transactions in the penalty statute. 5314 is not just about individuals filing FBARs. 5314 also has to do with financial institutions and there's a reg in 1010.360 and that reg directs financial institutions to report transactions having to do with foreign financial agencies. So I think when we're looking at the language, we've got to kind of keep that in mind that this is encompassing a bit more in the broad language of 5314 and the penalty statute than just FBARs. But here, Mr. Bittner was penalized for not timely filing FBARs. Nothing else. You know, there's no dispute here, he was non-wilful. And when we talk about, you know, his personal money, we've got a chart on page 47 of our reply and it shows for his personal accounts, the aggregate balance in 2007 was less than $1.5 million, aggregate balance of personal accounts in 2008 was about $1 million, 2009 about $1 million. So yes, $3 million is quite punitive. And for what? You know, Mr. Bittner came forward. He voluntarily disclosed. The government spent no time looking for him or tracking him down or investigating him. He lived in Romania for two decades. He returned shortly after he learned, oh gosh, I'm out of compliance with some tax and reporting laws. And he took steps to remedy that. And the government says, thank you very much, pay $3 million. Or the IRS says, thank you very much, pay $3 million. I mean, again, not only did he file the FBARs correctly, right, not only did he file correct FBARs, even though he wasn't required to report all his bank account information, he did on advice of counsel, on advice of us, he attached a schedule to be transparent. And that schedule had all the account balances, the addresses, everything, account numbers. And then what happened? The agent relied solely on nothing else, just that information, the corrected FBARs and his account information, in calculating the non-willful penalties. Thank you. Thank you, counsel. The second case of the day will occur on a video conference, which the audio portion will be available to the public. The court will adjourn to hear that case virtually. Thank you. Thank you.